ENNIS v. BRIDGER (SMITH, Third Party
Defendant).
No. 425.

District Court, M. D. Pennsylvania.
Nov. 14, 1941.

O'Malley, Hill, Harris & Harris, of
Scranton, Pa., Henry T. Ginnane, of New-
ark, N. J., and George H. Detweiler, of
Philadelphia, Pa., for plaintiff.

Nogi, Harris & Nogi and Scragg &
Scragg, all of Scranton, Pa., for defendant.

WATSON, District Judge.

When the plaintiff had completed the
presentation of her evidence, counsel for
the defendant, Bridger, moved for the dis-
missal of the action. This motion is now
before the Court for disposition.

This action was brought by the plaintiff
to recover damages for injuries which she
sustained as a result of a fall from a horse.
The plaintiff, while a guest at a hotel
owned and operated by Bridger, was riding
a horse obtained from a stable operated for
the benefit of the guests of the hotel. The
plaintiff's evidence tends to show that she
fell from the horse on the left hand side
at about the time a stirrup on the right
hand side became detached from the sad-
dle of the horse upon which she was riding.

Bridger moved to dismiss the action on
the grounds, inter alia, that there was no
evidence from which negligence on the
part of himself or the third-party defend-
ant, Smith, could be found and, even if
negligence could be found, this negligence
was not the proximate cause of the injury.

The evidence regarding the al-
leged negligence on the part of Bridger
and Smith consisted solely of the testimony
of an expert horseman with regard to the
safety fastener by which the stirrup which
came off was attached to the saddle. This
fastener consisted of a metal bar attached
securely at one end to the side of the saddle
near the seat, the other end being unat-
tached and curved up toward the seat of the
saddle. The bar of the fastener extended
along the saddle and in close proximity

thereto in a position parallel with the ground when the saddle was in place. The stirrup is attached thereto by slipping the stirrup strap between the bar and the saddle at the upturned and unattached end of the bar. The length of the bar is approximately twice the width of the stirrup strap. The bar is unattached at the end nearer the back of the saddle so that if the rider falls from the horse, and the rider's foot remains in the stirrup, the stirrup will be pulled from the fastener, thus preventing the rider from being dragged by the horse. The expert testified that the stirrup will also be disengaged from the fastener if the rider's foot is thrust backward while riding and that the fastener for the right stirrup, which the plaintiff testified came off, had been pulled away from the saddle in such a manner that the inner edge of the fastener was not pressed tightly against the saddle. He further testified that the fastener was designed to maintain the stirrup in place both by the upturned end of the fastener bar and by the clamp effect secured by having the fastener bar pressed tightly against the saddle; and that, if it was not pressed tightly against the saddle, the stirrup would come off the catch more easily; and that this condition would be dangerous and unsafe. I have carefully examined the fastener which the expert described as defective, and find that there is little, if any, difference between it and the one which he stated was in proper condition. The fastener described as defective by the expert is not so "strained" that it does not exert a clamp-like pressure on the stirrup strap, and there is very little difference in the effort required to remove the stirrup strap from that fastener as compared with the effort required to remove the stirrup from the fastener on the other side of the saddle. In fact, I believe that a reasonable examination would not have revealed this slight difference which the expert calls a defect. It is the province of the jury to determine whether or not a defect could be discovered by a reasonable examination, but it is the Court's duty in the first instance to determine whether or not there is sufficient evidence to warrant the submission of this question to the jury. In this regard, it should be noted that the fastener is capable of examination and the Court is quite competent to determine without the aid of an expert whether or not a reasonable examination would have revealed any defect, and whether or not

the defect was so material as to warrant a finding that failure to correct the defect or call it to the attention of the plaintiff constituted a violation of the duty owed to the plaintiff by Bridger or Smith. I believe that the defect, if any, for reasons set forth above was neither material nor discoverable by a reasonable examination.

However, assuming that Bridger and Smith were negligent in furnishing the saddle with this fastener thereon, the plaintiff's evidence does not show that her injuries resulted therefrom. The only evidence offered as to the cause of plaintiff's injuries was the testimony of the plaintiff. The plaintiff testified that "Miss Mansfield took the path on the left and I took the path on the right. I rode, oh, possibly about twenty five feet after that, and I was a little uncomfortable in the saddle. I had had a little motion in the saddle as we rode along a little faster than we had been walking up and down the trail. Then I heard a thud and as I did that I had more swaying in the saddle and I realized what had happened. As I kept swaying back and forth I realized that the stirrup had come off the horse, and I was thrown over on the left." Later, on cross examination the plaintiff testified:

"Q. Just prior to the time that you fell off. Had you been trotting some distance before you fell off? A. As I started to trot, after we got going a while, I felt a slight swaying in the saddle.

"Q. And that continued for how long would you say before you fell off, A. Well, I would say—you mean, in yards or feet or something like that?

"Q. No. How many seconds or minutes? A. Well, maybe for about two minutes or three minutes.

"Q. So that you were in the saddle swaying and the horse trotting for at least two minutes, you would say? A. Yes.

"Q. Before anything else happened; that is correct, is it? A. That is correct.

"Q. And you were not alarmed at the swaying, were you, in the saddle? A. No.

"Q. Then as you got part down the road on a trot you said you heard a thud, did you, A. That is right.

"Q. And the next thing you knew you were on the ground, Miss Ennis? I rode a few more feet and I was on the ground, yes." The plaintiff also testified that "I had a slight swaying in the saddle, and I

674

heard a thud on the ground, and I rode a few more feet and I fell off the horse. I realized that the stirrup had come off."

■ The testimony above referred to constitutes the only evidence offered as to the circumstances surrounding the accident. From this testimony, the plaintiff contends that the jury should be permitted to determine whether or not the negligence of Bridger and Smith was the proximate cause of the injuries. An examination of this testimony reveals that there is nothing to show that a defect in the stirrup fastener was a cause of the plaintiff's injuries; that is, it cannot be determined that but for the defect in the fastener, the injury would not have been sustained. The plaintiff must show more than that there was a defect which could have been discovered by a reasonable examination and that she sustained injuries. There must be some evidence from which it can be determined that the defect was at least a cause of the accident. Giving full credence to all the testimony in the case, there is nothing to show that the fastener did not function in the very way it was supposed to function, that is, released the stirrup strap as a result of a strong backward thrust upon the stirrup. The plaintiff testified that she experienced a "motion" in the saddle and that she felt a slight "swaying" in the saddle. These general terms do not constitute an aid in determining how the stirrup became disengaged. An examination of the saddle discloses that the stirrup could not have become disengaged because of the force exerted by its own weight. There must of necessity have been an additional force applied to the stirrup. What this force was or its strength is not shown. It might be inferred that the plaintiff furnished the additional impetus but the violence of this impetus cannot be measured even approximately from the evidence. Under these circumstances, the plaintiff has failed to meet the burden placed upon her to show that her injuries were caused by the negligence of Bridger or Smith.

■ The testimony of the expert tends to indicate that the use of the stirrup fastener here involved constituted negligence in that such fasteners are not safe for inexperienced riders. The complaint is sufficiently broad to include this ground and, although plaintiff's counsel have not indicated that they intend to rely thereon, it is necessary to dispose of the matter in order to avoid overlooking any evidence favorable to the plaintiff. The evidence clearly shows that saddles with fasteners such as are here involved are available for sale in the market and are in common use. The saddle here involved was used in a riding academy and there is no indication that such saddles are regarded as being unsafe or dangerous for inexperienced riders, other than the statement of the expert witness. I believe that it was not negligence on the part of Bridger or Smith to furnish a saddle with the type fastener here involved.

Now, November 14, 1941, this action is dismissed.